

## Fourth Court of Appeals
### San Antonio, Texas

**MEMORANDUM OPINION**

No. 04-25-00794-CV

**IN THE INTEREST OF A.I.M.H.**, S.R.V. Jr., and F.K.V., Children

From the 285th Judicial District Court, Bexar County, Texas
Trial Court No. 2024-PA-01616
Honorable Angelica Jimenez, Judge Presiding

Opinion by:    Lori Massey Brissette, Justice

Sitting:        Irene Rios, Justice
                Lori Massey Brissette, Justice
                Velia J. Meza, Justice

Delivered and Filed: March 25, 2026

AFFIRMED

This case involves the termination of parental rights to two children, who were ten and seven years old at the time of trial.[1] Both parents appeal the trial court's order terminating their parental rights. Mother challenges the sufficiency of the evidence to support the trial court's grounds for termination and the best-interest finding. Father challenges only the trial court's best-interest finding. We affirm the trial court's order.

---

[1] To protect the identity of the minor children, we will refer to appellants as "Mother" and "Father" and to their children by their initials. *See* TEX. FAM. CODE § 109.002(d); TEX. R. APP. P. 9.8(b).

## BACKGROUND

Mother and Father had two children together, S.R.V., Jr. and F.K.V.[2] On October 11, 2024, the Department filed an original petition for protection of a child, for conservatorship, and for termination in suit affecting parent-child relationship and for emergency removal of the children due to ongoing concerns regarding Mother's substance use in the presence of the children and domestic violence. At the time of removal and at trial, the children were living with their maternal grandmother.

On October 24, 2024, a full adversary hearing was held. Mother appeared via zoom and Father appeared through counsel. At that time, the trial court granted the Department temporary managing conservatorship. A family service plan was created which required Mother to submit to a psychological or psychiatric evaluation, to attend counseling sessions, to complete parenting classes, and to submit to a drug and alcohol dependency assessment and random drug testing. Mother signed her plan.

Because Father was sent to a nine-month drug treatment program after being released from prison, with no access allowed, he did not sign a family service plan until April 7, 2025. A full adversary hearing was held as to Father's rights on August 19, 2025, which resulted in no change in status or placement of the children. Father finally contacted the Department in September 2025, two months before trial, but refused to engage in any services.

On October 10, 2025, the trial court issued an order retaining the suit on the court's docket, extending the automatic dismissal date to April 11, 2026 and setting the matter for final trial on November 14, 2025. The trial was completed on November 17, 2025. On December 1, 2025, the

---

[2] The trial court did not terminate the parental rights of Mother and another father, (L.H.) to an older child, A.I.M.H., who was seventeen years old at the time of trial. Instead, the Department was named sole managing conservator of A.I.M.H., with both parents named as possessory conservators. Neither parent appeals this ruling.

trial court issued its order terminating Mother's rights to S.R.V., Jr. and F.K.V. under Texas Family Code section 161.001(b)(1)(D), (E), and (P)[3] and terminated Father's rights to S.R.V., Jr. and F.K.V. under Texas Family Code section 161.001(b)(1)(D), (E), (N) and (P). The trial court also found termination of both parents' rights was in the best interest of the children under Texas Family Code section 161.001(b)(2).

## FACTS

On initial referral, Mother admitted to using marijuana and methamphetamine every other day. Mother identified a safety plan placement for the children, but when that person tried to kill himself in front of the children, the children were then placed with maternal grandmother. Maternal grandmother then called the Department to make another referral because of Mother's continued substance abuse and an incident during which she threw a dresser to the ground when she was angry with maternal grandmother. When an investigator went to Mother's home, a rock of methamphetamine was found among Mother's things. The caseworker also testified Mother's home smelled like marijuana.

Mother refused to participate in an inpatient drug treatment program, leading the Department to refer her to a virtual one. Mother began the program but was discharged for failing to attend and check in. The Department then tried to re-engage Mother in another program but she refused. Out of thirty-six drug tests requested, Mother tested positive on thirty-three of them, including one just two weeks before trial.

---

[3] At the time the original petition was filed, Texas Family Code section 161.001(b)(1)(P) provided that termination could be supported by a finding that a parent "used a controlled substance, as defined by Chapter 481, Health and Safety Code, in a manner that endangered the health or safety of the child, and (i) failed to complete a court-ordered substance abuse treatment program; or (ii) after completion of a court-ordered substance abuse treatment program, continued to abuse a controlled substance. That provision is now, as of September 1, 2025, set forth under Texas Family Code section 161.001(b)(1)(O). TEX. FAM. CODE § 161.001(b)(1)(O).

Father completed a court-ordered, nine-month drug treatment program but refused to comply with the Department's requests for drug tests afterwards. He said he first needed to address his "demons" and "voices," specifically referring to diagnoses of schizophrenia, bipolar disorder, depression, and anxiety. He testified that he had attended only one session with a psychiatrist, a few weeks before trial, and had obtained a prescription for medication. But, instead of getting his prescriptions filled, he chose to take pills he obtained from the street to self-medicate.

Mother was also referred to counseling and exhibited behaviors that were concerning, including expressing suicidal ideation in front of the children and even talking to the caseworker about self-harm just a week before trial. Yet, she was discharged from counseling for missing appointments and not taking seriously the issues that led to removal. Mother did re-engage in counseling but did so just a few weeks before the trial setting.

In addition to substance abuse and mental health issues, the Department raised domestic violence as an issue warranting concern. The caseworker testified that the children jump when someone moves too quickly, exhibiting trauma from prior violence, and the older child had a panic attack during a visit when he thought Father had arrived. At trial, Mother testified Father had been violent[4] and that the children were legitimately concerned about their safety in his presence, but she intended to still co-parent with him. The Department and Mother's counselor expressed concerns about Mother's statement to them of her desire to reunite with Father, evidenced by the fact that the two did actually reunite after he was released and during the pendency of the termination proceedings. In fact, Father testified he is still in a relationship with Mother. Mother exhibited a desire to keep Father in the lives of the children by bringing him to visits and engaging

---

[4] Father denied ever laying a hand on Mother and also denied having a lengthy criminal history despite admitting to arrests for burglary, possession of heroin, DWI, domestic violence, theft, resisting arrest, and lying about his identification

him on phone calls with the children during her visits, even after the Department asked her not to do so. Father refused to engage in services, including domestic violence classes.

In terms of the ability to provide a stable environment for the children, Mother admitted she has not been employed for two years but sometimes bakes cakes from her home that she sells. Father was also unemployed and did not have a place of his own to live, choosing instead to either stay with Mother or with his own mother.

The caseworker testified that the lack of permanency has impacted the kids emotionally. The children are currently with their maternal grandmother who wishes to adopt them. The caseworker testified that the children are doing well, that the younger child has come out of his shell and is engaging much more than before, and that maternal grandmother is ensuring they continue with therapy.

## STANDARD OF REVIEW

A suit involving the potential termination of a parent's right to a child is of constitutional import. *See In re S.J.R.-Z.*, 537 S.W.3d 677, 683 (Tex. App.—San Antonio 2017, pet. denied). But a parent's rights "are not absolute. Just as it is imperative for courts to recognize the constitutional underpinnings of the parent-child relationship, it is also essential that emotional and physical interests of the child not be sacrificed merely to preserve that right." *In re C.H.*, 89 S.W.3d 17, 26 (Tex. 2002). Striking that balance, a trial court may terminate a parent-child relationship, pursuant to Texas Family Code section 161.001, only if it finds by clear and convincing evidence one predicate ground enumerated in subsection (b)(1) and that termination is in the child's best interest. TEX. FAM. CODE § 161.001(b)(1)–(2); *see, e.g.*, *In re C.E.*, 687 S.W.3d 304, 308 (Tex. 2024). Clear and convincing evidence requires proof that will produce in the factfinder's mind "a firm belief or conviction as to the truth of the allegations sought to be established." TEX. FAM. CODE § 101.007. This heightened standard "guards the constitutional interests implicated by termination, while

retaining the deference an appellate court must have for the factfinder's role." *In re O.N.H.*, 401 S.W.3d 681, 683 (Tex. App.—San Antonio 2013, no pet.).

When reviewing the evidence in a parental termination case, we apply the well-established standards associated with both a legal and factual sufficiency review. *In re J.M.G.*, 608 S.W.3d 51, 53 (Tex. App.—San Antonio 2020, pet. denied). First, in a legal sufficiency review, we "view the facts in a light favorable to the findings of the trial judge, who heard the testimony, evaluated its credibility, and dealt the closest with the evidence at hand." *In re R.R.A.*, 687 S.W.3d 269, 276 (Tex. 2024) (quoting *In re J.F.-G.*, 627 S.W.3d 304, 315 (Tex. 2021)) (internal quotation marks omitted). We will not substitute our own judgment for that of the factfinder. Instead, the factfinder is the sole judge of evidentiary weight and credibility, including witness testimony. *In re J.O.A.*, 283 S.W.3d 336, 346 (Tex. 2009). We will "defer to the [factfinder's] determinations, at least so long as those determinations are not themselves unreasonable." *In re J.P.B.*, 180 S.W.3d 570, 573 (Tex. 2005) (quoting *Sw. Bell Tel. Co. v. Garza*, 164 S.W.3d 607, 625 (Tex. 2004)) (internal quotation marks omitted).

In our review, we must assume the factfinder resolved disputed facts in favor of its finding if a reasonable factfinder could do so. *In re J.F.C.*, 96 S.W.3d 256, 266 (Tex. 2002). While we will disregard all evidence contrary to a factfinder's determination if a reasonable factfinder could have disbelieved or found it to have been incredible, we will not disregard undisputed evidence even if it does not support the trial court's finding. *Id.*; *see, e.g.*, *C.E.*, 687 S.W.3d at 308.

In our factual sufficiency review, we consider the entire record and determine whether, in light of the entire record, any disputed evidence "is so significant that a factfinder could not reasonably have formed a firm belief or conviction" on the challenged finding. *J.F.C.*, 96 S.W.3d at 266.

**LEGAL AND FACTUAL SUFFICIENCY OF THE EVIDENCE TO SUPPORT THE PREDICATE GROUNDS FOR THE TRIAL COURT'S TERMINATION OF MOTHER'S PARENTAL RIGHTS**

Mother, but not Father, challenges the trial court's finding that termination is proper under Texas Family Code section 161.001(b)(1). Mother's parental rights were terminated pursuant to multiple predicate grounds under Section 161.001(b)(1), specifically (D), (E), and (P). Only one predicate violation under section 161.001(b)(1) is necessary to support a termination order. *See In re A.V.*, 113 S.W.3d 355, 362 (Tex. 2003); *In re F.B.C.L.*, No. 04-20-00477-CV, 2021 WL 1649221, at *1 (Tex. App.—San Antonio Apr. 28, 2021, no pet.) (mem. op.).

However, regardless of our holding with regard to subsection (P) of section 161.001(b)(1), we must still consider Mother's issues relating to the sufficiency of the evidence to support the trial court's findings under subsections (D) and (E) because termination under subsection (D) or (E) may serve as the basis for a future termination of parental rights. *See In re N.G.*, 577 S.W.3d 230, 234 (Tex. 2019); *see also In re J.W.*, 645 S.W.3d 726, 748 (Tex. 2022) ("[W]e may not bypass Father's evidentiary challenges to Subsections (D) and (E), the so-called endangerment grounds. Those grounds bear special significance because termination of a parent's rights under either can serve as a ground for termination of his rights to *another* child."). Therefore, we begin by analyzing the sufficiency of evidence under subsection (D) and (E).

**Termination under Section 161.001(b)(1)(D) and (E)**

To terminate parental rights pursuant to subsection (D), the Department must prove by clear and convincing evidence the parent knowingly placed the child in or allowed the child to remain in conditions or surroundings that endangered the child's physical or emotional well-being. TEX. FAM. CODE § 161.001(b)(1)(D). "Conditions or surroundings" establishing endangerment include "[i]nappropriate, abusive, or unlawful conduct by persons who live in the child's home or with whom the child is compelled to associate on a regular basis." *In re M.R.J.M.*, 280 S.W.3d

494, 502 (Tex. App.—Fort Worth 2009, no pet.). An environment that endangers the child may be created by the physical living conditions in the child's home or by the conduct of a parent living in the home, or both. *In re R.S.-T.*, 522 S.W.3d 92, 108–09 (Tex. App.—San Antonio 2017, no pet.). A parent knowingly places or allows a child to remain in an endangering environment when the parent is aware of the potential danger but disregards it. *M.R.J.M.*, 280 S.W.3d at 502. A child may therefore be endangered when the home environment creates a potential for emotional or physical injury even where the injurious conduct is not directed at the child and the child does not suffer injury. *Tex. Dep't of Human Services v. Boyd*, 727 S.W.2d 531, 533 (Tex. 1987); *I.N.D.*, 2020 WL 2441375, at *3.

Under Texas Family Code section 161.001(b)(1)(E), the Department must show—also by clear and convincing evidence—that the parent "engaged in conduct or knowingly placed the child with persons who engaged in conduct which endangers the physical or emotional well-being of the child." TEX. FAM. CODE § 161.001(b)(1)(E). Under this subsection, the focus is on the effect of the parent's conduct, which must be the result of a conscious course of conduct rather than a single act or omission. *In re J.T.G.*, 121 S.W.3d 117, 125–26 (Tex. App.—Fort Worth 2003, no pet.). "It is not necessary that the parent's conduct be directed at the child or that the child actually be injured; rather, a child is endangered when the environment or the parent's course of conduct creates a potential for danger which the parent is aware of but disregards." *In re R.S.-T.*, 522 S.W.3d 92, 110 (Tex. App.—San Antonio 2017, no pet.); *see also J.O.A.*, 283 S.W.3d at 345 ("[E]ndangering conduct is not limited to actions directed towards the child."). "Courts may further consider parental conduct that did not occur in the child's presence, including conduct before the child's birth or after he was removed from a parent's care." *In re A.B.R.*, No. 04-19-00631-CV, 2020 WL 1159043, at *3 (Tex. App.—San Antonio Mar. 11, 2020, pet. denied) (mem. op.).

The evidence in this case, detailed above, is clear that Mother's own actions have subjected the children to an environment riddled with her own illegal substance abuse, domestic violence committed by Father, and mental health concerns that neither she nor Father have satisfactorily addressed. "Parental and caregiver illegal drug use and drug-related criminal activity [] supports the conclusion that the children's surroundings endanger their physical or emotional well-being." *In re J.A.B.*, No. 04-23-00907-CV, 2024 WL 1421986, at \*2 (Tex. App.—San Antonio Apr. 3, 2024, pet. denied) (mem. op.) (quoting *In re J.T.G.*, 121 S.W.3d 117, 125 (Tex. App.—Fort Worth 2003, no pet.)) (internal quotation marks omitted); *see J.W.*, 645 S.W.3d at 749 ("Certainly, Mother's use of controlled substances while pregnant created a dangerous environment for [the child]"). "Domestic violence, want of self-control and propensity for violence may be considered as evidence of endangerment." *See R.S.-T.*, 522 S.W.3d at 110. Further, the evidence established that Mother has minimized the concerns about her own substance abuse and domestic violence committed by Father, has continued a relationship with Father despite the violence, and continues to engage the children with their Father, even after testifying the children have reason to be scared of him.

Based on the evidence detailed above, the trial court could have formed a firm belief or conviction Mother's actions and the environment she subjected them to endangered both children and constituted grounds for termination under Texas Family Code section 161.001(b)(1)(D) and (E). *I.N.D.*, 2020 WL 2441375, at \*3; *J.A.B.*, 2024 WL 1421986, at \*2; *J.T.G.*, 121 S.W.3d at 125; *J.W.*, 645 S.W.3d at 749. We therefore hold the evidence is both legally and factually sufficient to support the trial court's findings under both subsections (D) and (E). *See* TEX. FAM. CODE § 161.001(b)(1)(D) and (E); *J.O.A.*, 283 S.W.3dn at 345-46.

**Termination under Section 161.001(b)(1)(P)**

Because legally and factually sufficient evidence supports the trial court's termination on grounds (D) and (E), and a finding of only one ground for termination is necessary to support termination, we need not consider whether the evidence would support termination under subsection (P). *See A.V.*, 113 S.W.3d at 362; *see also* TEX. R. APP. P. 47.1.

### LEGAL AND FACTUAL SUFFICIENCY OF THE EVIDENCE TO SUPPORT THE TRIAL COURT'S FINDING THAT TERMINATION IS IN THE BEST INTEREST OF THE CHILDREN

Mother and Father argue the evidence was legally and factually insufficient to support the trial court's findings that termination of their parental rights is in the best interest of the children. We disagree.

### A. Applicable Law

Under Texas law, "there is a strong presumption that the best interest of a child is served by keeping the child with a parent." *In re R.R.*, 209 S.W.3d 112, 116 (Tex. 2006) (per curiam). However, a trial court must also presume "the prompt and permanent placement of the child in a safe environment is . . . in the child's best interest." TEX. FAM. CODE § 263.307(a). In making a best-interest determination, the factfinder looks at the entire record and considers all relevant circumstances. *In re C.H.*, 89 S.W.3d 17, 27–29 (Tex. 2002).

The Texas legislature codified certain factors to use in determining the best interest of a child, including:

(1)     the child's age and physical and mental vulnerabilities;

(2)     the frequency and nature of out-of-home placements;

(3)     the magnitude, frequency, and circumstances of the harm to the child;

(4)     whether the child has been the victim of repeated harm after the initial report and intervention by the department;

(5)     whether the child is fearful of living in or returning to the child's home;

(6)     the results of psychiatric, psychological, or developmental evaluations of the child, the child's parents, other family members, or others who have access to the child's home;

(7)     whether there is a history of abusive or assaultive conduct by the child's family or others who have access to the child's home;

(8)     whether there is a history of substance abuse by the child's family or others who have access to the child's home;

(9)     whether the perpetrator of the harm to the child is identified;

(10)    the willingness and ability of the child's family to seek out, accept, and complete counseling services and to cooperate with and facilitate an appropriate agency's close supervision;

(11)    the willingness and ability of the child's family to effect positive environmental and personal changes within a reasonable period of time;

(12)    whether the child's family demonstrates adequate parenting skills, including providing the child and other children under the family's care with:

    (A)     minimally adequate health and nutritional care;

    (B)     care, nurturance, and appropriate discipline consistent with the child's physical and psychological development;

    (C)     guidance and supervision consistent with the child's safety;

    (D)     a safe physical home environment;

    (E)     protection from repeated exposure to violence even though the violence may not be directed at the child; and

    (F)     an understanding of the child's needs and capabilities; and

(13)    whether an adequate social support system consisting of an extended family and friends is available to the child.

TEX. FAM. CODE § 263.307(b); *see In re A.C.*, 560 S.W.3d 624, 631 n.29 (Tex. 2018) (recognizing statutory factors as additional factors for consideration). Even before the legislature took action to

codify section 263.307(b), the Texas Supreme Court, in *Holley v. Adams*, identified factors to determine the best interest of a child:

(A)     the desires of the child;

(B)     the emotional and physical needs of the child now and in the future;

(C)     the emotional and physical danger to the child now and in the future;

(D)     the parental abilities of the individuals seeking custody;

(E)     the programs available to assist these individuals to promote the best interest of the child;

(F)     the plans for the child by these individuals or by the agency seeking custody;

(G)     the stability of the home or proposed placement;

(H)     the acts or omissions of the parent which may indicate that the existing parent-child relationship is not a proper one; and

(I)     any excuse for the acts or omissions of the parent.

544 S.W.2d 367, 371–72 (Tex. 1976).

The Department does not have to prove every factor for a trial court to find termination is in the child's best interest. *C.H.*, 89 S.W.3d at 27. In our review of the trial court's best-interest findings, we must consider "the totality of the circumstances" in light of these factors to determine whether sufficient evidence supports the challenged finding. *In re B.F.*, No. 02-07-334-CV, 2008 WL 902790, at *11 (Tex. App.—Fort Worth Apr. 3, 2008, no pet.) (mem. op.). Additionally, "[a] trier of fact may measure a parent's future conduct by his past conduct and determine whether termination of parental rights is in the child's best interest." *In re E.D.*, 419 S.W.3d 615, 620 (Tex. App.—San Antonio 2013, pet. denied).

"The evidence supporting the statutory grounds for termination may also be used to support a finding that the best interest of the child warrants termination of the parent-child relationship."

*In re S.M.G.*, No. 01-17-00056-CV, 2017 WL 2806332, at *6 (Tex. App.—Houston [1st Dist.] June 29, 2017, pet. denied) (mem. op.). "Evidence of a parent's unstable lifestyle, including habitual drug and alcohol use, can support the conclusion that termination is in the child's best interest." *In re F.M.*, No. 14-18-00384-CV, 2018 WL 4925127, at *7 (Tex. App.—Houston [14th Dist.] Oct. 11, 2018, pet. denied) (mem. op.); *see* TEX. FAM. CODE § 263.307(b)(8) (providing as one factor whether there is history of substance abuse by child's family or others who have access to child's home). "While the recent improvements made by [a parent in a termination proceeding] are significant, evidence of improved conduct, especially of short-duration, does not conclusively negate the probative value of a long history of drug use and irresponsible choices." *J.O.A.*, 283 S.W.3d at 346.

### B. Analysis

Here, the evidence detailed above describes two parents who have done little to address the issues leading to removal of the children. Both continue to use illegal drugs. Both have failed to address the domestic violence in their relationship. And while Mother has recently re-engaged in counseling and Father had one appointment with a psychiatrist just prior to trial, the evidence fails to demonstrate improvement in terms of either parent's mental health struggles. *See* TEX. FAM. CODE § 263.307(b)(3), (6), (7), (8), (10), and (11); *Holley*, 544 S.W.2d at 371–72. Further, Mother admits that Father is violent and that the children have legitimate concerns of safety around him, yet she displays no protective instinct toward them when it comes to him. *See* TEX. FAM. CODE § 263.307(b)(1), (5); *Holley*, 544 S.W.2d 367, 371–72 (Tex. 1976) (factors A, C, D, E).

Mother and Father's failure to successfully complete their family service plans, in fact, Father's refusal to engage at all, also supports the trial court's best interest finding. *See Holley*, 544 S.W.2d at 371–72; *see also, e.g.*, *In re B.R.T.*, No. 04-22-00416-CV, 2023 WL 29381, at *6

(Tex. App.—San Antonio Jan. 4, 2023, no pet.) (mem. op.) (evidence parent did not complete family service plan is probative of child's best interest).

Finally, we must consider the character of the placement of the children—with their maternal grandmother—who by all accounts is meeting the needs of the children, the fact that the caseworker testified the lack of permanency is negatively impacting them, and the desire of the grandmother to adopt them. All of this weighs in favor of termination.

Here, applying our standard of review for legal sufficiency and viewing the evidence in a light favorable to the trial court's findings, we conclude the trial court could have reasonably formed a firm belief or conviction termination of Mother's and Father's parental rights is in the best interest of both children. *See R.R.A.*, 687 S.W.3d at 276; *In re J.O.H.*, 617 S.W.3d 596, 599 (Tex. App.—San Antonio 2020, no pet.) (holding that, in considering child's best interest, parent's future conduct may be judged by past conduct). Turning to factual sufficiency, we further conclude that when viewing the entire record, any evidence contrary to the finding is not so significant that it would prevent a reasonable factfinder from forming the same firm belief or conviction termination of parental rights was in the best interest of S.R.V., Jr. and F.K.V. *See J.F.C.*, 96 S.W.3d at 266.

## CONCLUSION

We affirm the trial court's order of termination.

Lori Massey Brissette, Justice